Julie B. Axelrod (DC Bar 1001557)
Christopher J. Hajec (DC Bar 492551)
Elizabeth A. Hohenstein (DC Bar 1044138)
IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Avenue, NW
Suite 335
Washington, DC 20001
(202) 232-5590
jaxelrod@irli.org
chajec@irli.org
ehohenstein@irli.org

Attorneys for *Amicus Curiae*
Immigration Reform Law Institute

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE TRUSTEES OF PRINCETON UNIVERSITY, *et al.*, | Civil Action No. 17-cv-2325 (CRC) |
| *Plaintiffs*, | |
| v. | |
| UNITED STATES, *et al.*, | |
| *Defendants*. | |

## AMICUS CURIAE BRIEF OF THE IMMIGRATION REFORM
## LAW INSTITUTE IN SUPPORT OF DEFENDANTS

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The Immigration Reform Law Institute is a 501(c)(3) nonprofit corporation. It does not have a parent corporation and does not issue stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................................ ii

TABLE OF AUTHORITIES ............................................................................................... iv

IDENTITY OF *AMICUS CURIAE* .......................................................................................... 1

ARGUMENT ..................................................................................................................... 1

 I.  Because DACA Was Invalid, This Court May Not Reinstate It, And Plaintiffs Lack
 Standing....................................................................................................................2

 II. DACA Was Invalid................................................................................................. 3

     A.    The Immigration and Nationality Act does not authorize DACA............................... 3

     B.    The DACA program is a substantive rule that did not go through the procedural
     requirements of 5 U.S.C. § 553............................................................................. 8

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Action on Smoking & Health v. Civil Aeronautics Bd.*,
713 F.2d 795 (D.C. Cir. 1983)…………………………………………….…2

*Arizona v. United States*, 567 U.S. 387 (2012)………………………………...7

*City of Los Angeles v. Adams*, 556 F.2d 40 (D.C. Cir. 1977)……………………………..5

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979)……………………………………………...3

*Guevara v. Holder*, 649 F.3d 1086 (9th Cir. 2011)……………………………………………7

*In re Q- T- -- M- T-*, 21 I. & N. Dec. 639 (B.I.A. 1996)………………………………………1

*Lujan v. Defs. of Wildlife,* 504 U.S. 555 (1992)…………………………………....3

*Mada-Luna v. Fitzpatrick,* 813 F.2d 1006 (9th Cir. 1987)……………………………………9

*Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*,
297 U.S. 129 (1936)………………………………………………….…3

*Massachusetts v. EPA*, 549 U.S 497 (2007)……………………………………………4

*Matter of C-T-L-*, 25 I. & N. Dec. 341 (B.I.A. 2010)…………………………………………1

*Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016)……………………………………1

*Nat'l Ass'n of Mfrs. v. United States Dep't of Labor*, no. 95-0715,
1996 U.S. Dist. LEXIS 10478 (D.D.C. July 22, 1996)…………..…………………………8

*NRDC v. United States Forest Serv.*, 421 F.3d 797 (9th Cir. 2005)……………………………...8

*Pacific Gas & Electric Co. v. Federal Power Com.*,
506 F.2d 33 (D.C. Cir. 1974)………………………………………………....9

*Paulsen v. Daniels,* 413 F.3d 999, 1008 (9th Cir. 2005)…………………………………………2

*Succar v. Ashcroft*, 394 F.3d 8, 10 (1st Cir. 2005)…………………………………………4

*Sure-Tan, Inc. v. Nat'l Labor Relations Bd.*, 467 U.S. 883 (1984)……………………………....8

*Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015),
*aff'd Texas v. United States*, 809 F.3d 134 (5th Cir. 2015)……………………………6, 7

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision,*
    967 F.2d 598 (D.C. Cir. 1992)………………………………………………………2

*Univ. of the D.C. Faculty Ass'n/NEA v. D.C. Fin. Responsibility & Mgmt.*
    *Assistance Auth.,* 163 F.3d 616 (D.C. Cir. 1998)………………………………...…3

*Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457 (2001)…………………………………8

**Statutes**

5 U.S.C. § 706(2)(A)……………………………………………………………………...2

5 U.S.C. § 706(2)(C)…………………………………………………………………..…2

6 U.S.C. § 202(5)……………………………………………………………………….4

8 U.S.C. § 1103(a)(3)……………………………………………………………………...4

8 U.S.C. § 1158(d)(5)……………………………………………………………………4

8 U.S.C. § 1182(n)…………………………………………………………………….....8

8 U.S.C. § 1184(g)………………………………………………………………………8

8 U.S.C. § 1188………………………………………………………………...…………..8

8 U.S.C. § 1225(a)(1)……………………………………………………………………3

8 U.S.C. § 1225(b)(2)(A)………………………………………………………………3

8 U.S.C. § 1228(a)(3)…...………………………………………………………………4

8 U.S.C. § 1229a……………………………………………………………………………4

8 U.S.C. § 1324a(h)(3)…………………………………………………………………7

**Other Authorities**

H.R. Rep. No. 99-682, at 46 (1986)……………………………………………...…6

H.R. Rep. No. 104-725, at 383 (1996) (Conf. Rep.)……………………………………6

Memorandum from Janet Napolitano, *Exercising Prosecutorial*
    *Discretion with Respect to Individuals Who Came to the*
    *United States as Children* (June 15, 2012)…………………………………………6, 7, 9

Memorandum from Jeh Charles Johnson, *Exercising Prosecutorial
    Discretion with Respect to Individuals Who Came to the United
    States as Children and with Respect to Certain Individuals Who
    are Parents of U.S. Citizens or Permanent Residents* (Nov. 20, 2014)..............................5

Michael X. Marinelli*, INS Enforcement of the Immigration Reform
    and Control Act of 1986: Employer Sanctions During the
    Citation Period*, 37 Cath. U. L.R. 829 (1988)…………………………………………….6, 7

## IDENTITY OF *AMICUS CURIAE*

The Immigration Reform Law Institute ("IRLI") is a nonprofit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases in the interests of United States citizens and assisting courts in understanding federal immigration law.  For more than twenty years the Board of Immigration Appeals ("BIA") has solicited supplementary briefing, drafted by IRLI staff, from the Federation for American Immigration Reform, of which IRLI is a supporting organization, *See*, *e.g.*, *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016); *Matter of C-T-L-*, 25 I. & N. Dec. 341 (B.I.A. 2010); and *In re Q- T- -- M- T-*, 21 I. & N. Dec. 639 (B.I.A. 1996).

IRLI submits this *amicus curiae* brief to help this Court understand how the Deferred Action for Childhood Arrivals program ("DACA") lacks the force of law, and, indeed, is *ultra vires* agency action.

All parties have consented to the filing of this *amicus curiae* brief.  No party or party's counsel authored any part of this brief.  No person or entity, other than *amicus,* its members, or its counsel, has made a monetary contribution to its preparation or submission.

## ARGUMENT

Plaintiffs' claims against rescission of the DACA program depend on the assumption that the program both is substantively lawful and was implemented in a procedurally lawful manner. Neither assumption is true.  Since DACA was both substantively and procedurally invalid, plaintiffs' complaint challenging the decision of the Department of Homeland Security ("DHS") to rescind the program should be dismissed.

1

I.  **Because DACA Was Invalid, This Court May Not Reinstate It, And Plaintiffs Lack Standing.**

As explained below, the DACA program was invalid.  For that reason, it would be nonsensical for this Court either to declare that DHS may not rescind it or to enjoin its rescission. On the contrary, courts must hold unlawful, rather than give effect to, invalid regulations.  5 U.S.C. §§ 706(2)(A), (C) ("The reviewing courts shall . . . hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . ."); *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 621 (D.C. Cir. 1992) ("Agency actions beyond delegated authority are *ultra vires,* and courts must invalidate them.") (internal citation and quotations marks omitted).

If this Court were to invalidate the rescission of DACA, the effect would be to reinstate the rule previously in force—but only if that previous rule were valid.  *See, e.g., Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) (holding that the effect of invalidating an agency rule is to reinstate the rule previously in force); *Paulsen v. Daniels,* 413 F.3d 999, 1008 (9th Cir. 2005) (refusing to reinstate a previous rule under that standard because it was itself invalid).  Thus, because DACA was invalid, the invalidation of its rescission cannot revive it.

Indeed, because DACA was invalid, and because the effect of invalidating its rescission would be to reinstate the last lawful state of applicable regulations, the remedy plaintiffs seek would only result in the restoration of the *status quo* pre-DACA.  For this reason, at the minimum, plaintiffs' claimed injuries are non-redressable, and their claims should be dismissed

for lack of standing under Federal Rule of Civil Procedure 12(b)(2).  *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992).

**II.  DACA Was Invalid.**

DACA was invalid both because it was *ultra vires* and because DHS failed to follow the notice and comment requirement of the Administrative Procedure Act ("APA").

A.      The Immigration and Nationality Act does not authorize DACA.

In reviewing an *ultra vires* claim, courts examine statutory language to determine whether Congress intended the agency to have the power that it exercised when it acted.  *Univ. of the D.C. Faculty Ass'n/NEA v. D.C. Fin. Responsibility & Mgmt. Assistance Auth*., 163 F.3d 616, 620 (D.C. Cir. 1998).  A reviewing court must reasonably be able to conclude that the grant of authority contemplated the regulations issued.  *Chrysler Corp. v. Brown*, 441 U.S. 281, 308 (1979).

Analyzing DACA by this standard reveals that it has no statutory foundation and is a broad stroke of executive power not on the executive's own canvas, but on Congress's. Therefore, it is *ultra vires* and a nullity, and this Court should not reinstate it even if it finds its rescission invalid.  *See Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*, 297 U.S. 129, 134 (1936) ("A regulation which . . . operations to create a rule out of harmony with the statute, is a mere nullity").

First, the Immigration and Nationality Act ("INA") does not provide a statutory foundation for the DACA program.  On the contrary, DACA is a programmatic refusal by DHS to enforce Congress's clear statutory mandate.  Under the INA, any alien who entered the country illegally is an applicant for admission.  8 U.S.C. § 1225(a)(1).  And 8 U.S.C. § 1225(b)(2)(A) mandates that if an applicant for admission "is not clearly and beyond a doubt

3

entitled to be admitted, the alien *shall* be detained" for removal proceedings under 8 U.S.C. §
1229a (emphasis added). "Congress did not place the decision as to which applicants for
admission are placed in removal proceedings into the discretion of the Attorney General, but
created mandatory criteria." *Succar v. Ashcroft*, 394 F.3d 8, 10 (1st Cir. 2005). "[W]hile the
President has broad authority in foreign affairs, that authority does not extend to the refusal to
execute domestic laws." *Massachusetts v. EPA*, 549 U.S 497, 534 (2007).

True, two provisions of the INA provide broad, general grants of authority to DHS: 8
U.S.C. § 1103(a)(3) ("[The Secretary] . . . shall establish such regulations; prescribe such forms
of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as
he deems necessary for carrying out his authority under the provisions of this chapter."); and 6
U.S.C. § 202(5) ("The Secretary . . . shall be responsible for . . . [e]stablishing national
immigration enforcement policies and priorities."). The first of these, 8 U.S.C. § 1103(a)(3),
clearly fails to authorize DACA, which is not "necessary for carrying out" any part of the INA.
In any event, only if the authority of DHS to "deem[]" that an action is so "necessary" were
unlimited and unreviewable could these provisions grant authority for DACA, but in that case,
they would grant DHS a limitless authority over how it carries out its duties, making the
innumerable other provisions of the INA that detail how DHS is to carry out its duties
meaningless. *See, e.g.*, 8 U.S.C §§ 1158(d)(5) (providing requirements for asylum procedure),
1228(a)(3) (providing that expedited proceedings "shall be" initiated for aliens incarcerated for
aggravated felonies), 1229a (providing procedural requirements for removal proceedings).

Title 6 U.S.C. § 202(5)'s grant of authority to "[e]stablish[] national immigration
enforcement policies and priorities" also fails to authorize DACA. Its authorization to DHS to
set "priorities" does not authorize DACA, which, as explained below, goes far beyond making

removable aliens that meet its criteria low priorities for removal.  Thus, this provision could only authorize DACA based on its apparently open-ended authorization to DHS to establish enforcement "policies."  But if this language were as open-ended as that, it would allow DHS to establish a policy, for example, of removing only removable aliens who were violent felons, or only those who had been in the country less than two months, or only those who lacked a high-school education—and it would be patently unreasonable to suppose that Congress intended DHS to have authority to set policies so at odds with the INA.

Second, DACA is not a valid form of "deferred action."  True, faced with limited resources, an agency has discretion to implement the mandate of Congress as best as it can, by setting priorities for action.  *See City of Los Angeles v. Adams*, 556 F.2d 40, 50 (D.C. Cir. 1977) (holding that when a statutory mandate is not fully funded, "the agency administering the statute is required to effectuate the original statutory scheme as much as possible, within the limits of the added constraint.").

With DACA, however, DHS did not "effectuate the original statutory scheme as much as possible" within the limits set by underfunding.  DACA was not created because of lack of resources; the aliens protected by it were already rarely removed.  Memorandum from Jeh Charles Johnson, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who are Parents of U.S. Citizens or Permanent Residents* 3 (Nov. 20, 2014) (explaining that DACA applies to individuals who "are extremely unlikely to be deported given [the] Department's limited enforcement resources").[1]  Rather, the program reflects a policy judgment that these aliens should be free to

---

[1] This statement is scarcely consistent with Secretary Napolitano's bald assertion that "additional measures are necessary to ensure that our enforcement resources are not expended on these low priority cases but are instead appropriately focused on people who meet our enforcement

live and work in the United States without fear of deportation.  Far from "effectuat[ing] the original statutory scheme as much as possible," this policy judgment is at odds with the INA and congressional intent.  Not only has Congress rejected a legislative version of DACA repeatedly, it has found that "immigration law enforcement is as high a priority as other aspects of Federal law enforcement, and illegal aliens do not have the right to remain in the United States undetected and unapprehended."  H.R. Rep. No. 104-725, at 383 (1996) (Conf. Rep.).  Congress has also passed laws designed to reduce the incentives for illegal entry, and to incentivize self-deportation where enforcement is lacking.  *Texas v. United States*, 86 F. Supp. 3d 591, 634-35 (S.D. Tex. 2015), *aff'd Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) (arguing that DAPA would disincentivize illegal aliens from self-deporting); Michael X. Marinelli*, INS Enforcement of the Immigration Reform and Control Act of 1986: Employer Sanctions During the Citation Period*, 37 Cath. U. L.R. 829, 833-34 (1988) ("Marinelli") ("Congress postulated that unauthorized aliens currently in the United States would be encouraged to depart") (citing H.R. Rep. No. 99-682, at 46 (1986)).

    In any event, the deferred-action justification, even if accepted, cannot help plaintiffs in this case, for two reasons.  First, a prime feature of deferred action is that, as an exercise of discretion, it can be ended at any time.  Indeed, the memo that created DACA emphasizes the reversible nature of the program.  Memorandum from Janet Napolitano, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* 3 (June 15, 2012) ("DACA memo") ("This memorandum confers no substantive right, immigration status or pathway to citizenship.").  Because of the discretionary, reversible nature

---

priorities."  Memorandum from Janet Napolitano, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* 1 (June 15, 2012).

of deferred action, it would be illogical for this Court to hold that DACA is not *ultra vires* because it is deferred action, but then forbid DHS to rescind it.

Second, DACA is not *only* deferred action; as part of the DACA program, DHS has granted work authorization to its beneficiaries. *Id.* at 3. And it is not reasonable to conclude that Congress intended DHS to have the unrestricted power to grant work authorization to removable aliens, even "low-priority" ones. Congress, in making it illegal for illegal aliens to work, wished to discourage illegal entry and to encourage removable aliens to remove themselves, even if enforcement by removal is underfunded and slow to reach low-priority cases. *See Arizona v. United States*, 567 U.S. 387, 404 (2012) ("Congress enacted IRCA as a comprehensive framework for combating the employment of illegal aliens.") (citation and quotation marks omitted); *Texas v. United States*, 86 F. Supp. 3d at 634-35 (arguing that DAPA would disincentivize illegal aliens from self-deporting; Marinelli at 833-34.

8 U.S.C. § 1324a(h)(3) (defining an "unauthorized alien," that is, an alien ineligible for employment, as an "alien [that] is not at that time either (a) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this Act or by the Attorney General") certainly does not grant DHS the needed authority. That provision, which does not address deferred action at all, is an "exceedingly unlikely" grant of power from Congress to authorize work, because what the provision does address is the *unlawful* employment of aliens. *Texas,* 809 F.3d at 182-83. Indeed, as the Ninth Circuit has held, "[8 U.S.C. § 1324a] merely allows an employer to legally hire an alien (whether admitted or not) while his application [for adjustment of status] is pending." *Guevara v. Holder*, 649 F.3d 1086, 1095 (9th Cir. 2011). And if § 1324a(h)(3) permitted DHS to give work authorization to DACA beneficiaries, it could only be because that provision allowed DHS to authorize work for any class of alien it chose; the

provision contains no limiting language.  If Congress had granted the executive branch such vast discretion, it would have done so clearly, not through "vague terms or ancillary provisions—it does not, one might say, hide elephants in mouse holes."  *Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 468 (2001).  It is not reasonable to suppose that Congress, without any clear statement that it was doing so, granted to DHS the unrestricted power to overthrow Congress's own grants of work protection to American workers.  *See, e.g.,* 8 U.S.C. §§ 1182(n), 1184(g), 1188 (protecting American workers from competition from aliens); *Sure-Tan, Inc. v. Nat'l Labor Relations Bd.,* 467 U.S. 883, 893 (1984) ("A primary purpose in restricting immigration is to preserve jobs for American workers.").

For these reasons, the DACA program is *ultra vires* and should not be given effect by this Court.

> B.    The DACA program is a substantive rule that did not go through the procedural requirements of 5 U.S.C. § 553.

Even if this Court determines that DACA is not *ultra vires* on its face, it did not go through the proper procedural requirements for enacting a substantive rule.  Substantive rules issued by an agency that did not go through the notice and comment process are invalid.  *NRDC v. United States Forest Serv.*, 421 F.3d 797, 810 n.27 (9th Cir. 2005); *Nat'l Ass'n of Mfrs. v. United States Dep't of Labor*, no. 95-0715, 1996 U.S. Dist. LEXIS 10478, *55 (D.D.C. July 22, 1996) ("Under section 706(2), this court must hold unlawful and set aside regulations promulgated without adequate notice and comment.") (citation and internal quotation marks omitted).

> The critical distinction between a substantive rule and a general statement of policy is the different practical effect that these two types of pronouncements have in subsequent administrative proceedings.  A properly adopted substantive rule establishes a standard of conduct which has the force of law.  In subsequent administrative proceedings involving a substantive rule, the issues are whether the

> adjudicated facts conform to the rule and whether the rule should be waived or
> applied in that particular instance.  The underlying policy embodied in the rule is
> not generally subject to challenge before the agency.

*Pacific Gas & Electric Co. v. Federal Power Com.*, 506 F.2d 33, 38 (D.C. Cir. 1974) (internal

citation omitted).  Thus, "a new policy constitutes a rule . . . is the extent to which the challenged

directive leaves the agency, or its implementing official, free to exercise discretion to follow, or

not to follow, the announced policy in an individual case."  *Mada-Luna v. Fitzpatrick,* 813 F.2d

1006, 1013 (9th Cir. 1987) (internal citations and quotation marks omitted) (emphasis in

original) (finding that an agency directive concerning the application of a deferred action policy

in the immigration context left ample discretion to agency officials and thus did not constitute a

substantive rule).

By this standard, DACA is clearly a substantive rule.  The memorandum establishing

DACA directs ICE agents to "exercise prosecutorial discretion, on an individual basis," to grant

deferred action for two years, subject to renewal, to aliens who meet the criteria set forth in the

memo, for the purpose of "preventing low priority individuals from being placed into removal

proceedings or removed from the United States," and to accept work authorization applications

from those granted deferred action.  Memorandum from Janet Napolitano, *Exercising

Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children*

2, 3 (June 15, 2012).  It is difficult to see how any agent so charged would feel free *not* to grant

deferred action in any given case, especially since the only purpose the agents are supposed to be

fulfilling in implementing the memo is to prevent the removal of those meeting the criteria.

*Compare Mada-Luna,* 813 F.2d at 1017 (finding discretion where officials were permitted to

grant deferred action based on "appealing humanitarian factors").  Thus, though couched in

terms of agents' discretion, the memo actually removes that discretion.  Indeed, the form of

9

words chosen verges on the comical; to order someone to "exercise his discretion" *only in a particular way,* as the DACA memo does, is to deny him the very discretion the order presupposes.

As a substantive rule, DACA was required to go through notice and comment; it never did.  It therefore is an invalid rule; at most, this Court, exercising its equitable powers, could allow it to remain in effect while notice and comment was accomplished.  But DACA will not, now, go through the notice and comment process, so there would be no occasion for this Court to allow it to remain in effect at all.

**<u>CONCLUSION</u>**

For the forgoing reasons, this Court should grant the defendants' motion to dismiss or, in the alternative, for summary judgment.

Dated: December 12, 2017                    Respectfully submitted,


                                            /s/ Julie B. Axelrod
                                            Julie B. Axelrod (DC Bar 1001557)
                                            Christopher J. Hajec (DC Bar 492551)
Elizabeth A. Hohenstein (DC Bar 1044138)
IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Avenue, NW
Suite 335
Washington, DC 20001
(202) 232-5590
jaxelrod@irli.org
chajec@irli.org
ehohenstein@irli.org

Attorneys for *Amicus Curiae*
Immigration Reform Law Institute