**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE TRUSTEES OF PRINCETON UNIVERSITY, MICROSOFT CORPORATION, and MARIA DE LA CRUZ PERALES SANCHEZ,

Plaintiffs,

v.

UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, and KRISTJEN NIELSON, in her official capacity as Secretary of the Department of Homeland Security,

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO ALLOW THREE DECLARANTS TO PROCEED BY PSEUDONYM**

Civil Action No. 17-cv-2325 (CRC)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO ALLOW THREE DECLARANTS TO PROCEED BY PSEUDONYM**

Plaintiffs respectfully seek leave to submit declarations from three declarants by pseudonym. Each declarant is a Microsoft employee who seeks to submit a declaration in support of Plaintiffs' Motion for Summary Judgment and/or Preliminary Injunction. Defendants do not oppose Microsoft's request to file the declarations via pseudonym, but take the position that Defendants should be entitled to know the declarants' identities. Microsoft opposes disclosing their identities for the reasons set forth below.

**FACTUAL BACKGROUND**

Plaintiffs challenge Defendants' September 5, 2017 rescission of the Deferred Action for Childhood Arrival Program (DACA) under the Administrative Procedure Act (APA) and the U.S. Constitution. Pursuant to the Court's November 22, 2017 Scheduling Order, ECF No. 7, Plaintiffs shall file a motion for a preliminary injunction or for summary judgment on December 15, 2017. In connection with that motion, Microsoft seeks to file declarations on behalf of three declarants who wish to withhold their identities from Defendants and the public (hereinafter, the "Doe declarants").

The Doe declarants are DACA recipients who are currently employed by Microsoft. Their declarations describe the crucial role that DACA has played in their lives and the consequences for them and for Microsoft stemming from DACA's rescission. The declarations generally relate to the legal issues of standing, facts that Defendants failed to consider in deciding to rescind DACA, irreparable harm, and the public interest to be weighed in assessing Plaintiffs' motion for injunctive relief.

The Doe declarants currently have protections arising from their DACA status. Barring injunctive relief, however, they will be subject to arrest, detention, and removal by immigration authorities once their DACA status expires.

The Government has "urge[d] DACA recipients to use the time remaining on their work authorizations to prepare for and arrange their departure from the United States."[1] Furthermore, the Government possesses the Doe declarants' personal information, including their home

---

[1] Talking Points - DACA Rescission, MSNBC, http://msnbcmedia.msn.com/i/MSNBC/Sections/NEWS/z-pdf-archive/170905-DACA-Talking-Points.pdf; *see also* Kristen Welker & Daniel Arkin, *Trump Administration Memo: DACA Recipients Should Prepare for 'Departure'*, NBC News (Sept. 5, 2007), https://www.nbcnews.com/news/us-news/white-house-memo-dacarecipients-should-prepare-departure-n799026.

addresses, which was collected from DACA applicants as part of the application process.[2] Though it promised at the time not to use that information for enforcement purposes, the Government has asserted its ability to revise that information-sharing policy without notice at any time. Defs.' Mem. in Support of Mot. to Dismiss Princeton *et al*. at 41, ECF No. 8-1 ("MTD Princeton"). Thus, Defendants claim the right, and have the ability, to deport the Doe declarants and/or their family members.

The Doe declarants reasonably fear retaliation for submitting declarations in support of the Plaintiffs in this case. Specifically:

- Declarant Jane Doe #1 was brought to the United States when she was six years old. Jane Doe #1 Decl. ¶ 3. She graduated from high school in 2002. *Id.* ¶ 4. Because of her undocumented status, she was initially unable to attend a four-year University and had to take one or two courses per quarter at a community college. *Id.* After thirteen years, however, Jane Doe #1 completed her associates' degree and successfully transferred to Seattle University. *Id.* ¶ 5. Once she received DACA status, she was able to obtain work authorization and a full-time position at Microsoft. *Id.* ¶¶ 6-7. DACA's rescission would lead to significant economic hardship for her and her family members, many of whom are also DACA recipients. *Id.* ¶ 16. Disclosure of her identity to the Government would cause her extreme mental distress. *Id.* ¶ 17. Jane Doe #1 is concerned about exposing her family to the possibility of detention or deportation. *Id.* Jane Doe #1's partner is also undocumented, and she fears putting him at risk through her participation in this lawsuit. *Id.*

---

[2] *See* Instructions for Consideration of Deferred Action for Childhood Arrivals, USCIS Form I-821D at 13 (Oct. 6, 2017), https://www.uscis.gov/archive/i-821d.

- Declarant John Doe #1 was brought to the United States when he was twelve years old. Jane Doe #1 Decl. ¶ 3. Because of DACA, he was able to obtain paid internships at various companies as an undergraduate student. *Id.* ¶ 7. Doe I was eventually hired by Microsoft as an associate consultant as part of the Microsoft Academy of College Hires. *Id.* ¶ 12. Microsoft has invested a tremendous amount of resources in his professional development. *Id.* If DACA is rescinded, Doe I will lose his job with Microsoft and his ability to use the valuable skills he developed through his education and career. *Id.* ¶¶ 14, 17. He fears that if his identity becomes public, it will negatively affect him and his family members, one of whom is also a DACA recipient. *Id.* ¶ 18. He finds it extremely stressful and frightening to think about the possibility of placing this burden on his family. *Id.*

- Declarant John Doe #2 was brought to the United States when he was one year old. John Doe #2 Decl. ¶ 3. Receiving DACA enabled him to attend to the University of California at Berkeley. *Id.* ¶ 8. He was hired by Microsoft upon his graduation from Berkeley, and because of DACA, he was able to start working as a software engineer. *Id.* ¶¶ 8, 11. He fears that disclosure of his identity to the Government would lead to immigration problems for undocumented members of his family, which would cause irreparable harm for him and his family. *Id.* ¶ 17.

## LEGAL STANDARD

Courts may exercise discretion to authorize the submission of materials by anonymous parties and declarants. *Does I Through III v. District of Columbia*, 216 F.R.D. 5, 6 n.1 (D.D.C. 2003) (noting that plaintiffs were granted leave to file via pseudonym); *Oah v. Tabor*, No. 90-1023, 1991 WL 120087, at *1 n.1 (D.D.C. June 18, 1991) (same). Courts authorize parties to proceed without disclosing their identity to the public in cases involving "matters of a sensitive

and highly personal nature," exercising their discretion in balancing the circumstances of each case with the tradition of openness in judicial proceedings. *Doe v. Cabrera*, 307 F.R.D. 1, 4 (D.D.C. 2014). Courts may also authorize parties to proceed without revealing their identities to the defendants when there is a particularly high risk of retaliation or harassment balanced against a low risk of prejudice to the defendants. *See, e.g.*, *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 877 F. Supp. 634, 639 n.1 (D.D.C. 1994) (allowing prisoners to proceed under pseudonyms due to the risk of retaliation by prison guards), *vacated and modified in part on other grounds*, 899 F. Supp. 659 (D.D.C. 1995); *Campbell v. USDA.*, 515 F. Supp. 1239, 1246 (D.D.C. 1981) (allowing plaintiffs to proceed anonymously in an action challenging the agency's interpretation of the Food Stamp Act); *Gomez v. Buckeye Sugars*, 60 F.R.D. 106, 106-07 (N.D. Ohio 1973) (allowing plaintiffs to proceed under pseudonyms in a Fair Labor Standards Act because the plaintiffs feared retaliation from defendants who were their employers); *Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148, 153-55 (D.D.C. 2011) (allowing plaintiff to file her residential address under seal and ex parte to protect safety of her minor children)

Although the District of Columbia Circuit has not articulated a precise test for whether to allow persons to proceed anonymously, courts have applied the following five factors:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;
>
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
>
> (3) the ages of the persons whose privacy interests are sought to be protected;
>
> (4) whether the action is against a governmental or private party; and

>    (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008) (citation and footnotes omitted); *see also J.W. v. District of Columbia*, 318 F.R.D. 196, 198 (D.D.C. 2016) (applying the same factors to parents' request for anonymity for themselves in suit on behalf of their minor child); *Cabrera,* 307 F.R.D. at 5 (applying the same factors to a plaintiff alleging sexual assault). All of these factors are relevant in this case except for the one pertaining to the ages of the declarants, who are all adults over the age of eighteen. The remaining factors militate heavily in favor of allowing each of the Doe declarants in this case to proceed via pseudonym.

## ARGUMENT

The declarations submitted by three Doe declarants contain highly sensitive and personal information, and each declarant faces a significant risk of retaliatory harm. Moreover, protecting their identities from the public and the Government—from whom they fear retaliatory immigration enforcement action—would not pose a risk of unfairness to Defendants. The Doe declarants are not parties to this case, and the Government has no need to know their identities in order to brief the legal matters before the Court.

**I.    Anonymity is Necessary to Protect Highly Sensitive and Personal Information.**

The Doe declarants should be allowed to proceed via pseudonym because immigration status is a highly sensitive and personal issue.

Numerous federal courts have recognized that information related to immigration status is highly sensitive and may warrant protection from disclosure. *See, e.g.*, *Hispanic Interest Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1247 & n.8 (11th Cir. 2012) (noting that revealing immigration status of school children could lead to "criminal prosecution, harassment and intimidation" and identifying cases in which courts allowed undocumented immigrant plaintiffs to

6

proceed anonymously); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000) (crediting plaintiffs' "highly vulnerable [immigration] status" as one of several factors weighing in favor of allowing plaintiffs to proceed anonymously); *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) (stating in a protective order ruling that allowing defendant employers to seek discovery regarding plaintiffs' immigration status could inhibit them from pursuing their rights "because of possible collateral wholly unrelated consequences, [and] because of embarrassment and inquiry into their private lives"); *Oah v. Tabor*, 1991 WL 120087, at *1 n.1 (allowing an immigrant plaintiff to proceed anonymously).

The sensitivity of information relating to immigration status is further heightened when the action is against a governmental entity, which could use the information to arrest, detain, or even deport undocumented immigrants involved in the lawsuit (in case of the federal government) or facilitate those actions by the federal government (in cases of state or local governmental entities). For that reason, courts are especially inclined to shield the identity of immigrants with uncertain or undocumented status challenging laws that implicate their status. *See, e.g.*, *Lozano v. City of Hazelton*, 496 F. Supp. 2d 477, 511 (M.D. Pa. 2007) (allowing plaintiffs to proceed without disclosing their identities to the defendants, because plaintiffs "could legitimately fear that defendant [municipality] was determined to expose their legal status to federal authorities"), *aff'd in relevant part*, 620 F.3d 170 (3d Cir. 2010), *summarily vacated and remanded on other grounds*, 563 U.S. 1030 (2011); *Puente Ariz. v. Arpaio*, No. CV14-1356-PHX-DGC, 2014 U.S. Dist. LEXIS 166223, at *5-6 (D. Ariz. Dec. 1, 2014) (allowing undocumented immigrants to file Doe declarations in a challenge against state statutes criminalizing seeking employment without federal work authorization), *rev'd*, 821 F.3d 1098 (9th Cir. 2016); *Keller v. City of Fremont*, No. 8:10-cv-0270, 2011 WL 41902, at *1-3 (D. Neb. Jan. 5, 2011) (allowing undocumented immigrants to

proceed anonymously as plaintiffs in a case challenging a ballot initiative making it unlawful for any entity to knowingly or recklessly lease or rent property to undocumented immigrants); Order Granting Pltfs.' Mot. to Proceed Under Pseudonyms, *Hispanic Interest Coal. of Ala. v. Governor of Ala.*, No. 5:11-cv-2736-SLB (N.D. Ala. Aug. 12, 2011), ECF No. 54 (allowing plaintiffs to proceed under pseudonyms and protecting their identities from the state government defendant because the challenged statute would enable state officials to detain undocumented immigrants on the basis of their immigration status).  "[F]ederal courts have recognized that inquiries into immigration status can have an *in terrorem* effect, limiting the willingness of plaintiffs to pursue their rights out of fears of the consequences of an exposure of their position."  *Keller*, 2011 WL 41902, at *2 (quotation marks omitted).

Here, submitting a declaration in support of the Plaintiffs' challenge against the administration could attract unwanted attention to the Doe declarants' immigration status. Moreover, having the declarants' names "in the public domain, especially in the Internet age," could subject the declarants to "unnecessary interrogation, criticism, or psychological trauma," in addition to the significant risk of retaliation they face, as discussed below.  *Cabrera*, 307 F.R.D. at 7 (allowing a plaintiff alleging sexual assault to proceed anonymously).  Given the risk of such scrutiny and harassment as recognized by numerous courts, disclosing the Doe declarants' immigration status would lead to harm that is well beyond the "mere[] . . . annoyance and criticism that may attend any litigation."  *J.W.*, 318 F.R.D. at 200 (quotation and citation omitted).

## II. Disclosure of the Doe Declarants' Identities Would Create a Significant Risk of Physical and Psychological Harm to Themselves and Their Families.

Disclosure of the Doe declarants' identities would expose them to a heightened risk of arrest, detention, and removal.  Since the rescission announcement on September 5, 2017, DACA

8

recipients have been living in fear that they are no longer shielded from the threat of deportation—a threat of being separated from their families, workplaces, and communities.

Their fear is warranted.  *First*, DACA recipients are particularly vulnerable to retaliation because they have furnished personal identification information to the Government as part of their DACA application process, and the Government has stated that it may modify its information-sharing policy at any moment, without any notice.  MTD Princeton at 41.  *Second*, the number of immigration-related arrests have increased by 40% in the fiscal year 2017.[3]  *Third*, the Government has "urge[d] DACA recipients to use the time remaining on their work authorizations to prepare for and arrange their departure from the United States"[4]; *see also Batalla Vidal v. Duke*, No. 16-cv-4756, 2017 WL 5201116, at *16 (E.D.N.Y. Nov. 9, 2017) (quoting a statement by Acting Director of ICE Thomas Homan that undocumented immigrants "should be uncomfortable" and "should look over [their] shoulder[s]" and "be worried" (quotation marks omitted) (alterations in original)).  When asked whether DACA recipients are subject to deportation, Attorney General Jeff Sessions stated that "[w]e can't promise people who are here unlawfully that they're not going to be deported."[5]  *Fourth*, at least one DACA recipient who had spoken out against the Trump

---

[3] U.S. Immigration & Customs Enforcement, *DHS Announces Progress in Enforcing Immigration Laws, Protecting Americans* (Dec. 5, 2017), https://www.ice.gov/news/releases/dhs-announces-progress-enforcing-immigration-laws-protecting-americans.
[4] Talking Points - DACA Rescission, MSNBC, http://msnbcmedia.msn.com/i/MSNBC/Sections/NEWS/z-pdf-archive/170905-DACA-Talking-Points.pdf; Kristen Welker & Daniel Arkin, *Trump Administration Memo: DACA Recipients Should Prepare for 'Departure'*, NBC News (Sept. 5, 2007), https://www.nbcnews.com/news/us-news/white-house-memo-dacarecipients-should-prepare-departure-n799026.
[5] Joel Achenbach, *Trump Aides Struggle to Clarify Policy on 'Dreamers' and Deportation*, WASH. POST (Apr. 23, 2017), https://www.washingtonpost.com/news/post-politics/wp/2017/04/23/trump-aides-struggle-to-clarify-policy-on-dreamers-and-deportation.

Administration has been detained.[6]

In this context, revealing the Doe declarants' identities would put their well-being and safety, as well as that of their families, at risk, because it would entail disclosing their immigration status to the very source of that retaliatory threat.[7] *See Lozano*, 496 F. Supp. 2d at 511 (allowing undocumented immigrant plaintiffs to proceed via pseudonym because "plaintiffs could legitimately fear that defendant" would "expose their legal status to federal authorities," and "[s]uch fears could cause plaintiffs to abandon their attempt to secure rights guaranteed them under federal law"); *Int'l Refugee Assistance Project (IRAP) v. Trump*, No. TDC-17-0361, 2017 WL 818255, at *2 (D. Md. Mar. 1, 2017) (allowing plaintiffs to proceed anonymously partly because disclosure of plaintiffs' identities to the Government could dissuade them from pursuing their rights in court while their relatives' visa applications were pending); *Puente Ariz.*, 2014 U.S. Dist. LEXIS 166223, at *5-6 (finding that undocumented immigrant declarants "reasonably fear serious consequences if their identities are disclosed" because defendants are seeking to prosecute the conduct discussed in the declarations); *Keller*, 2011 WL 41902, at *2 (allowing plaintiffs to not reveal their identities while challenging a local ordinance that would criminalize renting to undocumented immigrants).

---

[6] Christine Hauser, *A Young Immigrant Spoke Out About Her Deportation Fears. Then She Was Detained.*, N.Y. TIMES (Mar. 2, 2017), https://www.nytimes.com/2017/03/02/us/immigrant-daca-detained.html.

[7] The fact that one of the Plaintiffs in this case is a named DACA recipient and other named DACA recipients have submitted declarations in their own names does not undercut this argument: one person's bravery in standing up for her rights should not be counted against other DACA recipients' well-founded fear that public criticism of Defendants may lead to adverse immigration outcomes.

### III. This Action is Against the Government, Which Favors Anonymity.

The fact that this action is against the Government and not against a private party weighs in favor of allowing the Doe declarants to proceed via pseudonym. "[A]lthough the mere filing of a lawsuit against a private party may cause the defendant reputational and economic harm, such that fairness requires the identification of the plaintiffs, the government is not vulnerable to similar reputational harm, particularly in a case involving a challenge to the constitutional, statutory, or regulatory validity of government activity." *IRAP*, 2017 WL 818255, at *3; *see also J.W.*, 318 F.R.D at 201 ("Courts have concluded that anonymous litigation is more acceptable when the defendant is a governmental body because government defendants do not share the concerns about reputation that private individuals have when they are publicly charged with wrongdoing." (internal quotation marks omitted)); *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (noting that, unlike anonymous lawsuits against private parties, suits "challenging the constitutional, statutory[,] or regulatory validity of government activity . . . involve no injury to the Government's 'reputation'"). Because there is no due process concern when the Government is the defendant, this factor weighs in Plaintiffs' favor.

### IV. Any Risk of Unfairness to Defendants is Minimal and Outweighed by the Doe Declarants' Need for Anonymity.

Any risk of unfairness to Defendants is minimal and heavily outweighed by the Doe declarants' need for anonymity. *First*, the Doe declarants are third parties. The tradition of public access and open proceedings is implicated to a much lesser degree when involving third-party declarants, rather than parties to the case. *See Puente Ariz. v. Arpaio*, No. CV14-1356 PHX DGC, No. 2016 WL 7743406, at *4 (D. Ariz. Jan. 22, 2016) (noting in a protective order ruling in favor of non-party Doe declarants that "the public's interest in an open and fair adjudication is not seriously impaired" when plaintiffs are openly identified and the proceedings would be public);

11

*cf. J.W.*, 318 F.R.D. at 201 (noting that courts are wary of permitting anonymous litigation when doing so would pose "litigation obstacles for defendants"). Here, the real parties-in-interest—Plaintiffs Microsoft, Princeton University, and Maria De La Cruz Perales Sanchez—are fully identified, so that allowing non-party declarants to proceed via pseudonym would not seriously hinder the Government's defense.

*Second*, the issues in this case are primarily legal in nature and do not turn on individual DACA recipients' background or credibility. In *Campbell v. USDA*, 515 F. Supp. 1239 (D.D.C. 1981), a dispute over the proper interpretation of the Food Stamp Act, the court found that because the issues in the case were primarily legal in nature, Jane Doe plaintiffs were not required to divulge their identities in seeking declaratory and injunctive relief that would affect all social security disability recipients. *Id.* at 1246; *see also Lozano*, 496 F. Supp. 2d at 513 (concluding that because plaintiffs could proceed via pseudonym because "the identities of the particular plaintiffs are not as important to the outcome of the litigation as the legal arguments they raise"); *IRAP*, 2017 WL 818255, at *3 (finding that "any prejudice to defendants" in a case with anonymous plaintiffs is "limited because the Doe Plaintiffs are challenging the constitutional and statutory validity of a governmental order, such that the questions presented in this case do not depend on identifying the specific parties but instead are purely legal" (internal quotations marks omitted)).

Here, the Doe declarants seek to provide the Court with information that contextualizes how DACA and its rescission have affected Microsoft and its employees. Defendants make primarily legal arguments about those issues, and have not seriously challenged the fact that DACA's rescission will negatively impact DACA beneficiaries. To the contrary, Defendants now contend that they rescinded DACA in an "orderly" manner precisely to *avoid* the harm that would come from a more abrupt termination. *See* MTD Princeton at 2. Because the Plaintiffs' claims

against Defendants do not depend on the particularized facts and circumstances of the Doe declarants, but rather revolve around the question of the legality of Defendants' decision to rescind DACA, the risk of unfairness from allowing the Doe declarants to proceed via pseudonym is minimal.

*Third*, the parties' agreed briefing schedule contemplates no discovery or presentation of testimony at the motions hearing scheduled for January 31, 2018. Accordingly, there is no need for the Doe declarants to disclose their identities at this time. Any assertion of *future* prejudice would be wholly speculative. In the unlikely event that Defendants determine later in the litigation that they have an actual need for the declarants' identities, they could then make a motion attempting to demonstrate such need, at which time Plaintiffs could move for a Protective Order.[8]

## CONCLUSION

The relevant factors weigh in favor of allowing the Doe declarants to proceed via pseudonym. The Doe declarants would suffer significant harm if their identities were revealed, and permitting them to proceed via pseudonym would not unfairly prejudice the Government. Plaintiffs therefore respectfully request that this Court permit the Doe declarants to proceed via pseudonym.

---

[8] *See* Fed. R. Civ. P. 26(c); *see also* Order Granting Mot. for Protective Order, *Doe 1 v. Trump*, No. CV 17-1597 (D.D.C. Sept. 13, 2017), ECF No. 38 (limiting disclosure of pseudonym plaintiffs' identities to counsel for defendants and those in the employ of counsel for defendants in a suit challenging the presidential memorandum prohibiting accession of transgender military members); *Alexander v. FBI*, 186 F.R.D. 54 (D.D.C. 1998) (limiting disclosure of plaintiffs' medical information to counsel of record and not the defendant agency); *Alexander v. Falk*, No. 16-cv-2268, 2017 WL 3749573 (D. Nev. Aug. 30, 2017) (ordering disclosure of plaintiffs' identity to defendants' counsel only, with a prohibition on disclosing plaintiffs' identity to counsel's clients); *see also D'Onofrio v. SFX Sports Grp., Inc.*, 256 F.R.D. 277, 280 (D.D.C. 2009) ("[T]here need not be a great deal of harm to justify protecting information when doing so would not prejudice the party who will be prevented from seeing the information.").

13

| | |
|---|---|
| Dated: December 15, 2017 | Respectfully submitted,<br><br>By:  /s/ Thomas J. Perrelli<br><br>Thomas J. Perrelli<br>    D.C. Bar No. 438929<br>Lindsay C. Harrison<br>    D.C. Bar No. 977407<br>Sam Hirsch<br>    D.C. Bar No. 455688<br>Ishan Bhabha<br>    D.C. Bar No. 1015673<br>Ben Eidelson<br>    D.C. Bar No. 1031574<br>Alex Trepp<br>    D.C. Bar No. 1031036*<br>JENNER & BLOCK LLP<br>1099 New York Avenue, NW<br>Suite 900<br>Washington, DC 20001-4412<br>Phone 202 639-6000<br>Fax 202 639-6066<br>Email: tperrelli@jenner.com<br>          lharrison@jenner.com<br>          shirsch@jenner.com<br>          ibhabha@jenner.com<br>          beidelson@jenner.com<br>          atrepp@jenner.com<br><br>*Attorneys for The Trustees of Princeton University, Microsoft Corporation, and Maria De La Cruz Perales Sanchez*<br><br>*Application for Admission to District Court for District of Columbia Pending* |