**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, *et al.*, <br><br> Defendants. | No. 17-cv-1907 (JDB) |
| THE TRUSTEES OF PRINCETON UNIVERSITY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants. | No. 17-cv-2325 (JDB) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO REVISE THE COURT'S APRIL 24, 2018 ORDER**

## <u>TABLE OF CONTENTS</u>

I.    THE COURT CAN AND SHOULD CONSIDER THE NIELSEN
      MEMO. ....................................................................................................................1

II.   DACA'S QUESTIONABLE LEGALITY IS AN INDEPENDENT
      REASON WHY THE RESCISSION IS NEITHER JUDICIALLY
      REVIEWABLE NOR ARBITRARY AND CAPRICIOUS..................................................3

III.  ENFORCEMENT-POLICY CONCERNS ARE AN INDEPENDENT
      REASON WHY THE RESCISSION IS NEITHER JUDICIALLY
      REVIEWABLE NOR ARBITRARY AND CAPRICIOUS..................................................6

IV.   THE SECRETARY ADEQUATELY CONSIDERED ANY RELIANCE
      INTERESTS. ...............................................................................................................7

## TABLE OF AUTHORITIES

**CASES**

*Allied-Signal, Inc. v. NRC,*
    988 F.2d 146 (D.C. Cir. 1993) ................................................................................................ 1

*Alpharma, Inc. v. Leavitt,*
    460 F.3d 1 (D.C. Cir. 2006) .................................................................................................... 3

*Checkosky v. SEC,*
    23 F.3d 452 (D.C. Cir. 1994) .................................................................................................. 2

*Clayton v. D.C.,*
    931 F. Supp. 2d 192 (D.D.C. 2013) ....................................................................................... 3

*Crowley Caribbean Transport, Inc. v. Peña,*
    37 F.3d 671 (D.C. Cir. 1994) .................................................................................................. 5

*Encino Motorcars, LLC v. Navarro,*
    136 S. Ct. 2117 (2016) ............................................................................................................ 7

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ................................................................................................................ 6

*Hercules, Inc. v. EPA,*
    598 F.2d 91 (D.C. Cir. 1978) .................................................................................................. 5

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.,*
    626 F.3d 84 (D.C. Cir. 2010) .................................................................................................. 1

*Local 814, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen v. NLRB,*
    546 F.2d 989 (D.C. Cir. 1976) ............................................................................................... 3

*NAACP v. Trump,*
    298 F. Supp. 3d 209 (D.D.C. 2018) ....................................................................................... 2

*NLRB v. Wyman-Gordon Co.,*
    394 U.S. 759 (1969) ................................................................................................................ 2

*Syracuse Peace Council v. FCC,*
    867 F.2d 654 (D.C. Cir. 1989) ............................................................................................... 5

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) .................................................................................................. 5

The June 22, 2018 memorandum issued by Secretary of Homeland Security Kirstjen Nielsen ("Nielsen Memo") validly provides further explanation of, and agreement with, then-Acting Secretary of Homeland Security Elaine Duke's September 5, 2017 decision ("Duke Memo") rescinding the Deferred Action for Childhood Arrivals ("DACA") policy. Plaintiffs' attempts to brush aside the Nielsen Memo as having "no bearing on this case" inappropriately elevate form over substance and erroneously denigrate the memo as post-hoc rationalization. Plaintiffs' response to the merits of the Nielsen Memo hinges primarily on the faulty premise that the rationales further articulated are not sufficiently distinct from the conclusion that DACA is unlawful or sufficiently independent to justify the rescission on their own. When that argument falls away, Plaintiffs offer nothing more of substance. The Court should grant the motion.

## I.     THE COURT CAN AND SHOULD CONSIDER THE NIELSEN MEMO.

**1.** Plaintiffs argue that the Nielsen Memo provides no basis for revisiting the Court's ruling granting Plaintiffs' substantive APA claim because "the legality of Secretary Duke's decision [to rescind DACA] has already been decided." Pls.' Opp'n to Defs.' Mot. to Revise the Court's Apr. 24, 2018 Order ("Opp'n") at 6, ECF No. 75. In Plaintiffs' view, DHS could provide this Court with the further explanation it invited *only* through a new agency action rescinding DACA. But agencies routinely rectify decisions that are deemed inadequately supported on remand without vacatur, *see, e.g.*, *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 86–87 (D.C. Cir. 2010), and this Court's April 24 Order is the functional equivalent of that procedure. Although the Court held that the Duke Memo inadequately explained DHS's decision and was thus arbitrary and capricious, it acknowledged that DHS could potentially justify DACA's rescission with additional explanation on remand and found that both factors enunciated in *Allied-Signal, Inc. v. NRC*, 988 F.2d 146 (D.C. Cir. 1993), tipped in favor of remanding without

vacatur.  *NAACP v. Trump*, 298 F. Supp. 3d 209, 244-45 (D.D.C. 2018) ("Op.").  Ultimately, the Court chose a middle ground to ensure no unnecessary agency delay, ordering vacatur *but staying* such order "to allow the agency [the opportunity] to cure the defects that the court has identified." *Id.* at 244.  The Secretary promptly provided that explanation, and the Court should consider it.[1]

Plaintiffs offer no sensible reason why this Court should disregard the Nielsen Memo unless and until the Secretary formalizes the same explanations in a rescission decision that is entirely "new."  That would be particularly illogical because the Secretary did not simply decline to disturb the Duke Memo, but also "concur[red]" with the decision, Nielsen Memo at 3, and concluded in her own judgment that the rescission "was, *and remains*, sound," *id.* at 1 (emphasis added); *see also id.* at 2 ("Like Acting Secretary Duke, I lack sufficient confidence in the DACA policy's legality."); *id.* at 3 ("I agree with Acting Secretary Duke and the Attorney General" that a policy like DACA "should be enacted legislatively.").  Given her agreement with both the decision and its reasoning, Secretary Nielsen appropriately left then-Acting Secretary Duke's decision in place as her own.  Remanding for a "new" decision would be an academic exercise because the Secretary has already reconsidered the issue and independently arrived at the same result.  *See NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) ("To remand would be an idle and useless formality" where "[t]here is not the slightest uncertainty as to the outcome").

Plaintiffs' assertion that "important" functional consequences would flow from a new rescission memorandum do not warrant that unnecessary exercise.  Opp'n at 8.  For example,

---

[1] Judge Silberman's separate opinion in *Checkosky v. SEC*, 23 F.3d 452 (D.C. Cir. 1994), does not suggest otherwise. Although Judge Silberman noted that it was appropriate to consider an agency's additional explanation on remand when the court has "pause[d]" its "judicial review" without yet passing on the merits, *id.* at 463, he did not suggest—and Plaintiffs cite no cases holding—that this is the *only* circumstance in which it could be considered.  In fact, Judge Randolph noted in his separate opinion that a number of the cases Judge Silberman cited to support his view involved remands for further explanation *after* an arbitrary-and-capricious finding.  *Id.* at 492.

Plaintiffs suggest that a new agency action would trigger a new administrative record, but the Nielsen Memo identifies the exact materials considered by the Secretary, including the same record filed in this case (the completeness of which Plaintiffs never challenged) plus a handful of other publicly available documents.  Nielsen Memo at 1.  Likewise, any effects that a new decision (or the Nielsen Memo) might have on litigation pending in *other* jurisdictions is irrelevant here.

**2.**   Plaintiffs also argue that, even if considered, the Nielsen Memo largely contains post-hoc rationalizations that cannot justify "a decision made by a prior agency head nearly a year ago."  Opp'n at 9-10.  But the D.C. Circuit has long held that the "'post-hoc rationalization' rule is not a time barrier which freezes an agency's exercise of its judgment after an initial decision has been made and bars it from further articulation of its reasoning."  *Local 814, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen v. NLRB*, 546 F.2d 989, 992 (D.C. Cir. 1976).  Rather, it merely "forbids judges to uphold agency action on the basis of rationales offered by anyone other than the proper decisionmakers."  *Id.*  After all, "if it is appropriate for a court to remand for further explanation, it is incumbent upon the court to consider that explanation when it arrives."  *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006).  This includes an "amplified articulation," *Local 814*, 546 F.2d at 992, for the agency's actions.  The further explanation of DACA's rescission provided by Secretary Nielsen—unquestionably the proper decision-maker—fits squarely within these parameters.[2]

## II.   DACA'S QUESTIONABLE LEGALITY IS AN INDEPENDENT REASON WHY THE RESCISSION IS NEITHER JUDICIALLY REVIEWABLE NOR ARBITRARY AND CAPRICIOUS.

---

[2] At a minimum, the Court could simply reconsider its Order to remand without vacatur if it determines that the Nielsen Memo is sufficient, rather than require additional litigation of a "new" agency decision with an inevitable outcome.  *See Clayton v. D.C.*, 931 F. Supp. 2d 192, 210 (D.D.C. 2013) (court has great discretion to revise interlocutory decision as justice requires).

1.   Contrary to Plaintiffs' claim that the Secretary's further explanation of DACA's questionable legality is "entirely new," Opp'n at 10, this rationale is fully consistent with the Duke Memo's conclusion that DACA "should" be rescinded after "[t]aking into consideration" the *Texas* litigation and the Attorney General's legal determination.  Duke Memo at 4 (AR 255, ECF No. 60).  The Secretary's explanation simply clarifies Acting Secretary Duke's litigation-risk concerns, in light of this Court's ruling that her prediction of a nationwide injunction in the *Texas* case abruptly ending DACA was "implausible."  Op. at 243.  As the Nielsen Memo makes clear, irrespective of how any court would ultimately rule on DACA's legality, there are "sound reasons for a law enforcement agency to avoid discretionary policies that are legally questionable," as such policies risk undermining "public confidence" and increase the "threat of burdensome litigation." Nielsen Memo at 2.  Indeed, having "sufficient confidence in the legality" of a discretionary enforcement policy is "[a] central aspect" of DHS's policy judgment.  *Id.*  This amplified articulation is wholly permissible, especially in view of the Court's invitation to provide it.

2.  Plaintiffs incorrectly argue that the Secretary's further explanation of DACA's questionable legality is not meaningfully distinct from her explanation that DACA is unlawful. The conclusion that DACA *must* be rescinded because it is "contrary to law" rests on a purely legal determination.  *See id.* at 2.  But Secretary Nielsen's explanation that DACA also "should be," *id.* at 1-2, rescinded because of its questionable legality rests on her discretionary policy determination that (like Acting Secretary Duke) she lacks sufficient confidence in DACA's legality to warrant continuing it.  Secretary Nielsen could hardly have been clearer—repeatedly—that her doubts about DACA's legality were a "separate and independently sufficient reason[]" to rescind the policy, "regardless of whether" some courts would ultimately agree that DACA is unlawful. Nielsen Memo at 1, 2.  These policy justifications are distinct from the legal question of whether

DACA is consistent with the INA. This rationale is thus independently sufficient to sustain the decision. *Syracuse Peace Council v. FCC*, 867 F.2d 654, 657 (D.C. Cir. 1989).[3]

**3.** Aside from their flawed assertion that the Secretary's rationales are insufficiently distinct, Plaintiffs essentially leave unrebutted Defendants' argument that her further explanation of DACA's questionable legality confirms that the rescission is presumptively unreviewable, even under this Court's reading of *Crowley Caribbean Transport, Inc. v. Peña*, 37 F.3d 671 (D.C. Cir. 1994). Nor do Plaintiffs address Defendants' explanation of why, as this rationale underscores, *Crowley* does not permit judicial review of the ultimate enforcement *decision* even where it rests on a legal *reason* that may be separately carved out for review on its own. *See* Opp'n at 11 n.6.

**4.** The Secretary's reliance on "serious doubts about [DACA's] legality" withstands arbitrary-and-capricious review. Nielsen Memo at 2. Plaintiffs fail to meaningfully respond to the argument that the Fifth Circuit's decision could not have turned on the existence of a path to lawful status in the INA, because such a path *did not exist* for many putative DAPA recipients (*i.e.*, parents of lawful permanent residents), or for *any* expanded DACA recipients. Instead, the Secretary correctly read *Texas* as having turned on the conclusion that such a major policy of categorical non-enforcement was contrary to whatever prosecutorial discretion the INA allows. *Id.* at 2.

Plaintiffs also continue to suggest that there are material legal differences between DACA and DAPA. *See* Opp'n at 16. There are not. Even setting aside the vast size of both policies, DACA and DAPA also share the same qualitative differences with prior deferred-action policies, described in *Texas* as "so far afield" that they "shed[] no light on the Secretary's authority to implement DAPA." 809 F.3d 134, 184 (5th Cir. 2015).

---

[3] Plaintiffs' remarkable suggestion that the Secretary's statements "should not be taken at face value," Opp'n at 13, is factually baseless and inconsistent with the "presumption of regularity" that applies here. *E.g.*, *Hercules, Inc. v. EPA*, 598 F.2d 91, 123 (D.C. Cir. 1978).

Finally, that the Nielsen Memo does not explicitly discuss the OLC Memo (a document the Secretary undisputedly considered, Opp'n at 18 n.9) is not dispositive.  On its face, the OLC Memo is no longer material here given that its legal analysis was largely rejected by both the Fifth Circuit and the Attorney General (who of course has authority over OLC).  In any event, the Nielsen Memo states that its legal-doubt rationale justifies the rescission *even if* some courts have suggested that DACA was lawful, Nielsen Memo at 2, which applies with equal force to OLC.

## III.  ENFORCEMENT-POLICY CONCERNS ARE AN INDEPENDENT REASON WHY THE RESCISSION IS NEITHER JUDICIALLY REVIEWABLE NOR ARBITRARY AND CAPRICIOUS.

**1.**  Plaintiffs' attack on the Secretary's additional explanation of enforcement-policy concerns is similarly founded on the flawed premise that policy judgments do not independently justify DACA's rescission.  But as is obvious on the face of the Nielsen Memo (and the nature of the concerns themselves), these pure enforcement-policy justifications independently support DACA's rescission "regardless of whether . . . concerns about the DACA policy render it illegal or legally questionable."  *Id.*  The express language of the memo likewise debunks Plaintiffs' claim that the "so-called 'policy' reason concern[ing] the importance of adhering to 'the laws adopted by Congress'" is somehow tainted by the agency's legal position that DACA is "incompatible with 'the INA's comprehensive scheme.'"  Opp'n at 12 (citation omitted).  The Nielsen Memo makes no such connection; rather, it explicitly identifies an enforcement-policy concern that DACA necessarily lacks the permanence and detail of statutory law, "[e]ven if" it "could be implemented lawfully through the exercise of prosecutorial discretion."  Nielsen Memo at 2.

**2.**  Otherwise, Plaintiffs do little to rebut Defendants' argument that these distinct policy rationales reflect a "complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," *Heckler v. Chaney*, 470 U.S. 821, 831 (1985), and thus independently

confirm that DACA's rescission is unreviewable.  Instead, Plaintiffs imply that the Nielsen Memo's inclusion of a legal justification alongside discretionary rationales is a problematic effort to "evade judicial review."  Opp'n at 12.  This concern is unfounded because, among other reasons, the same could have been said in *Chaney*, and the existence of multiple rationales underscores why even the legal rationale for the discretionary enforcement decision to rescind DACA should be unreviewable.

**3.**  Likewise, with the exception of one half-sentence in a footnote, Plaintiffs fail to respond to Defendants' explanation that these rationales confirm the rescission of DACA is not arbitrary and capricious.  *See id.* at 14 n.8 (disparaging the Secretary's additional explanation as "makeweight" and "irrational" and "unsupported by any evidence").  But it is quite rational for a law enforcement agency to aggressively enforce the laws as written, unless and until they are amended by Congress, while still leaving room for a truly case-by-case "exercise of deferred action in individual cases if circumstances warrant."  Nielsen Memo at 3.

## IV.   THE SECRETARY ADEQUATELY CONSIDERED ANY RELIANCE INTERESTS.

While conceding that the Nielsen Memo "acknowledge[s]" and "discuss[es]" asserted reliance interests, Plaintiffs move the goalposts, essentially claiming now that her discussion is too short.  Opp'n at 19-20.  But the Secretary's discussion plainly addresses the crux of their criticism, and it readily satisfies any applicable requirement that an agency must be "*cognizant* that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'"  *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (emphasis added and citation omitted).  Plaintiffs point to no statute requiring the sort of cost-benefit analysis they suggest is required, *see* Opp'n at 19 n.11, 20—and, of course, no such analysis was conducted when the DACA policy was first implemented, *see* DACA Memo at 1-3 (AR 1-3).

Dated: July 27, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director

JOHN R. TYLER
Assistant Branch Director

/s/   *Kathryn C. Davis*
KATHRYN C. DAVIS (DC Bar No. 985055)
STEPHEN M. PEZZI (DC Bar No. 995500)
RACHAEL WESTMORELAND
KATE BAILEY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone: (202) 616-8298
Fax: (202) 616-8470
Email: Kathryn.C.Davis@usdoj.gov

*Counsel for Defendants*